UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS — COURT ORDER

Before the Court is a Motion for Summary Judgment filed by defendant Kirstjen Nielsen, Secretary of Homeland Security ("Defendant" or the "Government").[1] (Docket No. 48.) Plaintiff Anthony Mitchell ("Plaintiff") has filed an Opposition (Docket No. 50), to which Defendant has filed a Reply (Docket No. 79). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for May 7, 2018, is vacated, and the matter taken off calendar.

**I.   BACKGROUND**

This is an employment discrimination action. Plaintiff is an African-American male who was born in 1956.[2] (Docket No. 50-1, Pl.'s Statement of Genuine Issues of Material Facts and Additional Statement of Material Facts ISO Pl.'s Opp'n ("SGD") ¶ 5.) Plaintiff began working for the Transportation Security Administration (TSA) as a Transportation Security Officer (TSO) at Los Angeles International Airport (LAX) on October 20, 2002. (SGD ¶ 7.) This position has a number of physical requirements, including but not limited to: pushing; reaching, including above the shoulders; reaching to lift; bending/stooping; performing pat-down searches; lifting and carrying objects weighing 5 to 50 pounds at checkpoints; and lifting and carrying checked baggage weighing 15 to 100 pounds. (SGD ¶¶ 8, 9.) A TSO must be able to repeatedly lift and carry items weighing up to 70 pounds, and

---

[1]   Jeh Johnson was the Secretary of Homeland Security when the case was originally filed, but he has since been replaced by Kirstjen Nielsen. See Vinieratos v. Dep't of Air Force, 939 F.2d 762, 772 (9th Cir. 1991) ("Title VII requires that in a civil action alleging employment discrimination by the government, 'the head of the department, agency, or unit, as appropriate, shall be the defendant.'" (quoting 42 U.S.C. § 2000e-16(c))).

[2]   While Plaintiff's operative FAC alleges that Plaintiff has brown skin, his Opposition does not identify his skin color, and his "Comparator Information" chart provides "Complainant has not self-identified his color." (Compare Docket No. 18 ¶ 12 with Opp'n, Ex. 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

efficiently and thoroughly manipulate and lift baggage and other items subject to security processing, as well as meet and maintain medical requirements for security screening work. (SGD ¶ 10.)

Plaintiff performed the essential duties of a TSO from October 20, 2002, until about 2003 or 2004, when he suffered a work-related injury to his right shoulder. (See Decl. of Anthony Mitchell ISO Opp'n ("Mitchell Decl.") ¶ 3.) Thereafter, he resumed his essential duties until December 25, 2008. (See id.) On December 25, 2008, Plaintiff sustained a work-related injury to his left shoulder, which resulted in him being placed on limited duty and receiving workers' compensation until January 28, 2011. (SGD ¶ 11.) A limited duty officer assignment is subject to its effect on TSA's ability to carry out its mission, i.e., operational needs, space limitations, and staffing requirements. (SGD ¶ 12.) As part of Plaintiff's Office of Workers' Compensation Program claim, the Department of Labor (DOL) hired an orthopedic surgeon, Rama E. Chandran, M.D. ("Dr. Chandran"), to perform an Independent Medical Examination (IME). (SGD ¶ 13.) On January 27, 2010, Dr. Chandran determined that, while Plaintiff's 2008 work injury had healed, pre-existing injuries to his left shoulder (i.e., severe osteoarthritis of left shoulder/narrowing of left glenohumeral joint) and cervical spine (i.e., severe degenerative disc disease of cervical spine and spinal stenosis) rendered Plaintiff "not be [sic] able to return to any occupation that require[s] any motion of the left shoulder or any overhead activities of his left shoulder." (SGD ¶ 14.[3]) On February 4, 2010, Dr. Chandran identified Plaintiff's restriction as "permanent" and determined that he could not use his upper left extremity for reaching, reaching above the shoulder, pushing, pulling or lifting. (SGD ¶ 15.[4]) These findings were stated in Dr. Chandran's IME Report, dated January 27, 2010, and again noted in his Supplemental IME Report, dated June 5, 2010. (SGD ¶ 16.[5])

In November 2010, TSA officials at Headquarters directed local field offices, such as LAX, to conduct a review of their long-term limited duty program because the agency could no longer afford to keep TSOs on limited duty for extended periods. (SGD ¶ 22.) As part of this review, Human Resource Specialist Mary Young[6] ("Young") requested that all TSOs who were on limited duty longer than one year, including Plaintiff, provide updated medical documentation regarding their medical status and prognosis for returning to full duty by January 14, 2011. (SGD ¶ 23.) In response, on February 2, 2011, Plaintiff provided a "Comprehensive Orthopedic Re-Evaluation and Supplemental Report" from Fayegh

---

[3] While Plaintiff disputes this fact, the evidence he presents does not contradict that Dr. Chandran made this determination. (See SGD ¶ 14.)

[4] Plaintiff disputes this fact, yet he has adduced no evidence to contradict that Dr. Chandran made this determination. (See SGD ¶ 15.)

[5] To the extent Plaintiff objects for vagueness, his objection is overruled. (See SGD ¶ 16.)

[6] Mary Young is an African-American female, who was over the age of 40 at all relevant times. (SGD ¶ 24.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

Vakili, M.D. ("Dr. Vakili"), Plaintiff's treating orthopedic physician. (SGD ¶ 25.) Dr. Vakili opined that Plaintiff could "resume modified work (sedentary office work with minimal use of the left arm over two pounds)," and that, if such modified work were unavailable, Plaintiff should be "considered temporary and totally disabled" until his next visit on February 23, 2011. (Id.) This report noted that Plaintiff had stated he works an 8-hour day, five days per week, and that his job requires, among other things, "repetitive use of his upper extremities for pulling, pushing and lifting of items which occasionally weigh more than 25 pounds," and overhead reaching and overhead lifting." (SGD ¶ 26.) Plaintiff had also acknowledged that his essential duties require him to "repeatedly lift and carry items weighing up to 70 pounds." (SGD ¶ 27.) The report was limited to an evaluation of Plaintiff's job-related injury only, and stated that Plaintiff was scheduled for shoulder surgery, which would require 4 to 6 months of recovery time. (SGD ¶ 28.)

On March 16, 2011, Ivan Cikos, Deputy Assistant Federal Security Director for Screening, issued Plaintiff a Notice of a Proposed Removal for being physically unable to perform the essential functions of a TSO. (SGD ¶ 29.) The Proposed Removal had been drafted by Young. (Opp'n, Ex.2 ¶ 12) The Proposed Removal relied upon medical evidence dated January 27, 2010, January 12, 2011, and February 2, 2011. (Mot., Ex. B, at 16.) On March 24, 2011, Jason Pantages[7] ("Pantages"), Assistant Federal Security Director for Screening, issued a notice of decision; this notice was rescinded on May 6, 2011, when Pantages learned that it was issued without giving Plaintiff the appropriate amount of time to respond. (Opp'n, Ex. 3.) The time for Plaintiff to reply to the Notice of Proposed Removal was extended, and Plaintiff timely responded. (Id.)

In response to the Notice of Proposed Removal, Plaintiff produced a medical report from Dr. Vakili dated March 25, 2011. (SGD ¶ 31.) This report stated that "per [patient]'s request [patient] is being released to regular work with no restriction as of 3-25-2011." (SGD ¶ 32.) On June 10, 2011, Pantages issued his final Notice of Removal, in which he removed Plaintiff from his position as TSO, identifying as his reason Plaintiff's physical inability to perform the essential functions of a TSO. (SGD ¶ 39; Mot., Ex. C.) Pantages explained that the medical information presented, including Dr. Vakili's reports from February 2, 2011, and March 25, 2011, and Dr. Chandran's IME report, indicated that Plaintiff could not perform the essential functions of a TSO due to his permanent left shoulder condition.[8] (SGD ¶ 39; Mot., Ex. C.)

In 2011, Pantages removed 22 TSOs in addition to Plaintiff who failed to provide medical information showing that they could perform the essential functions of a TSO without restrictions. (SGD ¶ 43.) These employees had permanent physical restrictions, based on the documents provided to

---

[7] Pantages is male and during the relevant period was over the age of 40. (SGD ¶ 42.)

[8] Separately, on April 18, 2011, based upon Dr. Chandran's medical report, the Department of Labor determined that Plaintiff had healed from his work-related injury, but was "not [able to] return to his TSO position because of preexisting conditions." (SGD ¶ 38.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

Young, who presented the information to Pantages for review. (SGD ¶ 44.) These employees included men and women of different races including African-American, Hispanic, and Caucasian; of different colors including white, brown, black, and unknown; and who were born between the years 1938 and 1978, and thus were over and under 40 years old in 2011. (SGD ¶ 45; Mot., Ex. F; Opp'n, Ex. 7.)

Eight TSOs who had been on limited duty were not ultimately removed. (Opp'n 6–10 (citing Opp'n, Ex. 6).) These individuals include women and men; their races are Hispanic, Caucasian, or unknown; they are white or of unknown color; and they were born between the years 1949 and 1976. (See Mot., Ex. F; Opp'n, Ex. 7.) Seven of these individuals, referred to by Plaintiff as "Comparators A through G," provided physicians' reports indicating that they could return to full duty. (See Opp'n Ex. 6.) TSA did not possess any records that indicated that Comparators A through G had permanent conditions that would preclude them from performing the job of TSO. (SGD ¶ 48.) Comparators A, E, F, and G returned to work with limitations and/or restrictions. (Id.) The eighth TSO who was not removed was an African-American woman over the age of 40 who did not provide medical documentation of her ability to perform TSO essential functions. (Opp'n, Ex. 6 at 3; SGD ¶ 50.) Instead, she applied to work as an administrative assistant for TSA and was hired for that position, which did not have the physical requirements of the TSO position. (Opp'n, Ex. 6 at 3; SGD ¶ 50.)

On September 19, 2011, Plaintiff filed a formal Equal Employment Opportunity administrative claim alleging discrimination based on race, gender, color, national origin, and age. (SGD ¶ 1.) On April 29, 2014, an Equal Employment Opportunity Commission (EEOC) administrative law judge found that Plaintiff had not established a prima facie case of discrimination and that TSA had a legitimate nondiscriminatory reason for Plaintiff's removal. (Mot., Ex. K; FAC ¶ 58.) The EEOC Office of Federal Operations affirmed the administrative law judge's decision. (SGD ¶ 3.)

Plaintiff then filed this action on October 15, 2016. (Docket No. 1.) The operative First Amended Complaint alleges that Defendant violated Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq. In particular, Plaintiff asserts claims for disparate treatment based on race, sex, color, and age. (Docket No. 18.) Defendant now moves for summary judgment on each of these claims.

**II.    LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); see also Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The moving party must affirmatively show the absence of such evidence in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See Celotex, 477 U.S. at 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(c). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & Cnty. of S.F., 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202). Otherwise, summary judgment shall be entered.

**III.    ANALYSIS**

Plaintiff's first three claims are for disparate treatment on the basis of race, color, and sex in violation of Title VII. Plaintiff's fourth claim is for age discrimination in violation of the ADEA. Defendant argues that Plaintiff cannot establish a prima facie case nor does Plaintiff have evidence that Defendant's legitimate reasons for its decision were pretextual.[9/]

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Similarly, the ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623. A plaintiff may establish a Title VII or ADEA disparate treatment claim under the burden-shifting standard of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 688 (1973). See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

McDonnell Douglas provides that the burden of establishing a prima facie case, though not onerous, is upon the plaintiff. McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. 1817, 36 L. Ed. 2d 688. To establish a prima facie case under Title VII, the plaintiff must show that: (1) he belongs to some protected class; (2) he was qualified for his position; (3) he suffered an adverse

---

[9/]    The same burden-shifting standard applies to claims under Title VII and the ADEA, and thus, these claims are discussed together. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) ("We combine the Title VII and ADEA analysis because the burdens of proof and persuasion are the same.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

employment action, such as termination, demotion, or denial of an available job; and (4) the employer treated similarly situated employees outside his classification more favorably. Chuang v. Univ. of Cal., Davis, Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000).  To establish a prima facie case under the ADEA, the plaintiff must establish that he (1) was at least forty years old, (2) performing his job satisfactorily, (3) was discharged, and (4) was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances that otherwise give rise to an inference of age discrimination. Diaz v. Eagle Produce LTD. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000)).

"Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee [or applicant]." Burdine, 450 U.S. at 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207.  "[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason'" for the adverse action. Id. at 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (quoting McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. 1817, 36 L. Ed. 2d 688).  If the defendant satisfies this, the burden shifts back to the plaintiff to establish that the articulated legitimate reason is in fact a pretext for discrimination. Id. at 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207.

    **A.**    **Prima Facie Case**

Defendant argues that Plaintiff cannot establish a prima facie case.  In particular, Defendant contends that Plaintiff cannot prove that he was qualified for the TSO position or that similarly situated individuals outside of his protected classes were treated more favorably than he was. (Mot. 9–14.)  It is undisputed that Plaintiff is a member of protected classes under Title VII and the ADEA as an African-American male who was over the age of 40 when he was removed, and that he suffered an adverse employment action by being removed.  (See Mot. 10.)

Plaintiff admits that he has no direct evidence of discrimination. (SGD ¶ 47; Opp'n 13.)  Instead, he points to circumstantial evidence to establish a prima facie case. (Opp'n 14.)  In an effort to establish that he was indeed qualified for the position of TSO, Plaintiff asserts that, prior to 2008, he had performed the essential duties, that Dr. Vakili released him to "regular work with no restriction" on March 25, 2011, and that since March 25, 2011, Plaintiff "never had any difficulty with putting a bag up on a shelf."  While there is significant evidence that Plaintiff was not capable of performing the required functions of a TSO, in light of Dr. Vakili's report releasing Plaintiff "to regular work with no restrictions" on March 25, 2011, the Court assumes for the sake of argument that this is sufficient evidence to create a triable issue of whether Plaintiff was qualified for the position of TSO at the time of his removal.

Plaintiff identifies 8 purported comparators to contend that similarly situated individuals not in his protected classes were treated more favorably that him. (Opp'n 18–21.) "In order to show that the employees allegedly receiving more favorable treatment are similarly situated (the fourth element

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

necessary to establish a prima facie case under Title VII), the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). First, one of the purported comparators obtained a different position within TSA, and thus was not required to perform the physical functions of a TSO, and is not similarly situated to Plaintiff. As for the other 7 purported comparators, Plaintiff alleges that they are similarly situated because he, like them, presented Pantages with Dr. Vakili's report releasing Plaintiff to full duty. (Opp'n 18–19.) However, Dr. Vakili's report qualified Plaintiff's release as being provided "per patient's request." The physician reports of the other TSOs were not so qualified. In addition, Defendant possessed Dr. Chandran's record at the time of its decision, which indicated that Plaintiff was permanently limited in the use of his left shoulder and ability to perform essential TSO duties. Plaintiff has not adduced evidence to suggest that, at the time of Defendant's decision not to remove him or her, Defendant possessed records that any of the 7 individuals who were not removed suffered from a permanent restriction from performing full TSO functions.[10] In this material respect, Plaintiff is more similar to the 22 individuals who were also removed, as Defendant's records showed that they, like Plaintiff and unlike Plaintiff's 8 purported comparators, suffered from permanent physical restrictions.[11] Thus, the 8 purported comparators identified by Plaintiff are not similar in "all material respects" to Plaintiff, and Defendant's treatment of them does not give rise to an inference of discrimination.

Since Plaintiff has not shown that similarly situated individuals outside of his classifications were treated more favorably than Plaintiff, Plaintiff cannot establish a prima facie case of disparate treatment for purposes of his Title VII claims.

Furthermore, while Plaintiff notes that to state an ADEA prima facie case, he must present evidence "that a substantially younger employee with equal or inferior qualifications replaced him," he only observes in passing that four TSOs who were not removed were younger than 40. (Opp'n 20 (citing Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990).) However, the other four retained TSOs were older than 40, and Plaintiff has not presented evidence that those younger than him were of equal or inferior qualifications to him. Nor does the evidence Plaintiff has presented otherwise give rise to an inference of age discrimination.[12] Diaz, 521 F.3d at 1207.

---

[10] When one of these TSOs was ultimately found to have a permanent disability he, like Plaintiff, was removed. (See Opp'n 9–10 (citing Opp'n, Ex. 6 at 3).)

[11] Notably, these 22 individuals were diverse, and included men and women of various races, colors, and ages.

[12] Notably, of the other 22 removed individuals, 15 are younger than Plaintiff. (See Mot., Ex. F; Opp'n, Ex. 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

Because Plaintiff has failed to present evidence that similarly situated individuals from outside of his protected classes were treated more favorably than he was, or that he was replaced by a substantially younger employee with equal or inferior qualifications, Plaintiff has failed to state a prima facie case under Title VII or the ADEA.

### B.     Legitimate or Pretextual Reason

Even if Plaintiff had stated a prima facie case, he has failed to present evidence that Defendant's stated nondiscriminatory reason for removing Plaintiff is a pretext for discrimination. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." Burdine, 450 U.S. at 254–55, 101 S. Ct. 1089, 67 L. Ed. 2d 207. Defendant asserts that Plaintiff was removed because he was physically unable to perform the essential functions of a TSO, and has presented physicians' reports to support this reason. (See Mot. 14; Mot., Ex. C.) This is a legitimate, nondiscriminatory reason sufficient to shift the burden back to Plaintiff to show that this reason is actually a pretext for discrimination. (See Opp'n 21.)

"The plaintiff can prove pretext '(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.'" Raad v. Fairbanks N. Star Borough, 323 F.3d 1185, 1194 (9th Cir. 2003) (quoting Chuang, 225 F.3d at 1127). Pretext requires more than a showing that the employer was "wrong, mistaken, or unwise." Dep't of Fair Employment & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 746 (9th Cir. 2011). Rather, pretext requires a showing that the employer did not honestly believe its proffered explanation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 516, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.'" (emphasis in original)). A plaintiff's suspicions based on conjecture and speculation that discrimination occurred is insufficient to create a genuine, triable issue of material fact, and thus is insufficient to establish pretext and avoid summary judgment. See Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1028 (9th Cir. 2001).

First Plaintiff contends that some of the purported comparators still had restrictions when they returned to work, in an effort to attempt to weaken the credibility of Defendant's reason for removing Plaintiff. (Opp'n 23–24.) As discussed above, these TSOs lacked records of permanent limitations. Furthermore, when one of them was ultimately discovered to have a condition that permanently prevented him from being able to perform the essential tasks of a TSO, he was removed. This further demonstrates a lack of discriminatory motive in Plaintiff's removal, and does not support a finding of pretext.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-7695 PA (MRWx) | Date | May 7, 2018 |
|---|---|---|---|
| Title | Anthony Mitchell v. Kirstjen Nielsen, Secretary of Homeland Security | | |

  Plaintiff also challenges the degree of consideration that Pantages gave Dr. Vakili's March 25, 2011, report. (Opp'n 24–26.) However, that report stated that Plaintiff was released "per patient's request," and it did not indicate that Plaintiff was actually capable of performing the tasks that he was required to as a TSO. In addition, Defendant possessed records from Dr. Chandran concluding that Plaintiff was permanently disabled, and would never be able to perform the full functions of a TSO, and Dr. Vakili's report from February 2011 opining that Plaintiff could not do more than sedentary office work and should not lift more than two pounds at that time. While Plaintiff disputes the meaning of the phrase "per patient's request" and the accuracy of the doctors' diagnoses and limitations, such disputes do not render Pantages's interpretation of these reports evidence of pretext. Even if Pantages was wrong to not give greater weight to Dr. Vakili's March 25, 2011 report, Plaintiff has presented no evidence that Pantages – or anyone else involved in Plaintiff's removal – did not believe that Plaintiff was unable to perform the full functions of a TSO.

  Finally, Plaintiff asserts that Pantages did not follow proper policy in removing Plaintiff and that this suggests pretext. (Opp'n 27–28.) Plaintiff notes that he was initially not given an opportunity to respond to the Notice of Proposed Removal. However, Plaintiff has presented no evidence that this more than a clerical error, and he does not dispute that when brought to Pantages's attention, Pantages rescinded the premature notice of decision, and gave Plaintiff more time to respond. Plaintiff also argues that Pantages improperly relied upon the DOL termination of Plaintiff's workers' compensation in rendering his decision because that document had not been disclosed to Plaintiff as a basis for the Notice of Proposed Removal. (Opp'n 27–28.) In his deposition, Pantages disputed this and stated that he had not relied on that decision, but merely cited to it. (Opp'n, Ex. 8, 76:12–79:18; see also Mot., Ex. C.) Even if Pantages had improperly relied upon the DOL decision, with no other evidence to suggest pretext, it would be unreasonable to interpret this as anything more than a mistake. This is particularly so, given that the information cited was also available in Dr. Chandran's report, which was disclosed in the Notice of Proposed Removal. (See Mot., Ex. C, Reply 5.)

  Having duly considered the arguments and evidence presented, the Court concludes that no reasonable jury could find that Defendant's legitimate and nondiscriminatory reason for removing Plaintiff was a pretext for discrimination.

**Conclusion**

  For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket No. 48) is granted. The Court will enter a Judgment consistent with this Order. The final pretrial conference on calendar for May 11, 2018, is vacated.[13]

  IT IS SO ORDERED.

---

[13] The Order to Show Cause issued to Plaintiff's counsel on April 23, 2018, (Docket No. 54) is hereby discharged.